NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JOHN BLEVIS,                                    :
                                                :
                                                :          Civil Action No.: 06-4857 (JLL)
                        Plaintiff,              :
                                                :
v.                                              :                    **OPINION**
                                                :
LYNDHURST BOARD OF EDUCATION, :
MADELENA ZAK, RICHARD LEES,          :
ANITA PESEVICH, and JOSEPH ABATE, :
                                                :
                        Defendants.            :
_____:

For the Plaintiff: Roosevelt Porter (*Mets & Schiro, LLP*)
For the Defendant: Howard I. Mankoff (*Marshall, Dennehey, Warner, Coleman & Goggin*)
                   Victoria A. Cabalar (*Marshall, Dennehey, Warner, Coleman & Goggin*)

**LINARES**, District Judge.

        This matter comes before the Court on the motion of Defendants Lyndhurst Board of

Education ("the Board"), Madelena Zak ("Zak"), Richard Lees ("Lees"), Anita Pesevich

("Pesevich"), and Joseph Abate ("Abate") for summary judgment [CM/ECF #35] filed February

13, 2009.  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons set forth in this

Opinion, Defendant's motion is granted in part and denied in part.  An appropriate Order

accompanies this Opinion.

1

**BACKGROUND**

The facts set forth herein are taken from the parties' Local Civil Rule 56.1 statements unless otherwise noted.

Plaintiff John Blevis ("Blevis" or "Plaintiff") has taught in the Science Department at Lyndhurst High School since 1986.  (Pl. 56.1 Statement ¶ 6.)  In 2003, he filed a lawsuit asserting that the Board and others retaliated against him in violation of the New Jersey Conscientious Employees Act ("CEPA"), N.J.S.A. § 34:19-3 et seq., and Pierce v. Ortho Pharmaceuticals Corp., 417 A.2d 505 (N.J. 1980).  (Id. ¶ 10.)  In that suit, Blevis alleged that he had been retaliated against for filing grievances, alerting Lees to safety and cleanliness concerns, and reporting a request that he change a student's grade.  (Id. ¶¶ 11-12.)  The lawsuit was resolved in a voluntary dismissal with prejudice by Blevis on June 30, 2005.  (Def. 56.1 Statement ¶ 5.)

After his first lawsuit was filed, Blevis continued to raise safety concerns about Lyndhurst High School.  These included:

- Reporting improper chemical storage at the school to state authorities.  (Pl. 56.1 Statement ¶ 13.)

- Advising Abate, Pesevich and Lees that chemical storage would need to be addressed during construction at Lyndhurst High School.  (Id. ¶ 14-17.)

- Reporting water leaks in the chemical closet.  (Id. ¶ 18.)

- Warning of insufficient ventilation in classrooms.  (Id. ¶ 19.)

In addition to making safety issues known, Blevis reported that certain teachers were not qualified to teach the subjects they were currently employed to teach.  (Id. ¶ 21.)

A. **Conflicts with Zak and Pesevich**

Some time subsequent to 2003, Blevis applied for two supervisory positions at Lyndhurst High School.  Lees and Pesevich were involved in the promotion decision, which resulted in the hiring of Zak as Supervisor of Science, and Laura Marinelli as General Supervisor. (Id. ¶¶ 26-28.)  Both hires were made in July 2005.  (Id.)

Zak, who was Blevis's supervisor, soon came into conflict with him.  Zak required Blevis to go through another a less senior teacher in order to get chemical supplies for his science classes.  (Id. ¶ 31.)  Zak also modified Blevis's Honors Chemistry schedule, splitting instruction between two rooms and placing the laboratory session during the students' lunch.  (Id. ¶ 32.)  Splitting the instruction between two classrooms impeded Blevis's work.  (Id. ¶¶ 37-38.)

Blevis took exception to students eating lunch while working with chemicals in his lab sessions; after a difference of opinion between Zak and Blevis and input from concerned parents, Zak shortened the lab period by 20 minutes in order for the students to eat.  (Id. ¶¶ 33-35.)  Blevis complained of this arrangement, claiming that students were getting credit for seven hours of instruction while only receiving six.  (Id. ¶ 36.)

Blevis received a schedule change notice on March 10, 2006, which altered the subjects he was teaching: whereas he had previously taught biology and chemistry, he was assigned on that date to teach physical science and biology.  (Id. ¶¶ 39-40.)  He asserts that this schedule change also resulted in his losing an SAT prep course stipend of $8,000 per year.  (Id. ¶ 41.)  Further changes made concerning Blevis were his removal from positions coaching the Academic Competition Team and advising the student government.  (Id.)

The animosity between Zak and Blevis also increased during March 2006.  Blevis claims

3

that Zak stated her desire to replace him, her intention to reassign him, and asserted her authority over him in a humiliating meeting in front of another teacher.  (Id. ¶¶ 42-44.)  Blevis notified Pesevich, Abate, and the Board that he believed he was being harassed between March and October of 2006.  (Id. ¶¶ 45-48.)

While Blevis's work relationship with Zak was deteriorating, he was also coming into conflict with Pesevich, the principal of Lyndhurst High School.  In early 2005, Blevis claims that he was requested by several Board employees, including Pesevich, Lees, and Abate, to change the grade of a student athlete in order to maintain the athlete's eligibility.  (Id. ¶¶ 52-55.)  Blevis had the student take another exam, and then altered the grade when the student passed the second exam.  (Id. ¶ 56.)  Blevis also came into conflict with Pesevich concerning an April 2006 incident with a student in a boys' restroom, where Pesevich allegedly interrupted a student relieving himself and required the student to leave until Pesevich exited the restroom.  (Id. ¶ 58-59.)  Upon meeting with Pesevich concerning the incident, Blevis alleges that he was threatened with teaching astronomy; he was then assigned astronomy the following fall.  (Id. ¶ 61-62.)

**B.     October 2006**

Zak conducted a workshop on October 6, 2006, which Blevis and other teachers attended. (Id. ¶ 63.)  Zak and Blevis disagreed with each other concerning the accommodation of mainstreamed special education students, and Zak requested that Blevis leave the workshop. (Id. ¶¶ 65-68.)  On October 9, 2006, Zak and Blevis had a confrontation concerning some memoranda prepared by Blevis.  (Id. ¶¶ 69-70.)  Blevis informed his vice principal that day that he would be filing charges; this suit followed On October 10, 2006.  (Id. ¶¶ 71-72.)  After this lawsuit was filed, Blevis raised concerns about supervising too many students on a field trip.  (Id.

4

¶ 74.)

On approximately October 17, 2006, Pesevich requested that Blevis sign a "Rice notice," a document providing notice that a public body will be considering personnel action against one of its employees.[1]  (Id. ¶ 73.)  The Rice notice was supported by numerous statements given by Blevis's coworkers, alleging behavior such as Blevis smirking when speaking to Zak and  Blevis being "loud and obnoxious."  (Id. ¶¶ 75-82.)  One teacher also noted that she was uncomfortable in Blevis's presence after he discussed the Rice notice with her.  (Id. ¶ 83.)  This teacher and another teacher at Lyndhurst High School stated that Blevis caused them to fear for their safety. (Def. 56.1 Statement ¶ 31.)

The Board held a hearing pursuant to the Rice notice, and at the hearing it was decided that Blevis should undergo psychiatric and medical exams.  (Pl. 56.1 Statement  ¶ 84.)  Blevis's appeals of the decision of the Board's determination are ongoing, and Blevis has not yet undergone the requested exams.  (Id. ¶¶ 85-90.)  The Board suspended Blevis without pay on January 22, 2007.  (Id. ¶ 88.)

## II.   DISCUSSION

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue

---

[1]Rice v. Union County Reg. High Sch. Bd. of Educ., 382 A.2d 386, 390 (N.J. Super. Ct. App. Div. 1977).

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine issue of material fact compels a

trial.  Id. at 324.   In so presenting, the non-moving party must offer specific facts that establish a

genuine issue of material fact, not just "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   Thus, the

non-moving party may not rest upon the mere allegations or denials in its pleadings.  See

Celotex, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions,

bare allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v.

N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts

and their reasonable inferences in the light most favorable to the non-moving party.  See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

In his Complaint, Blevis states six causes of action.  Count one is a § 1983 claim against

all Defendants based on the retaliatory acts of Zak, Lees, Pesevich, and Abate.  Count two is a

claim for negligent infliction of emotional distress against all Defendants.  Count three is a

CEPA claim against all Defendants as "employers" of Blevis.  Count four is a CEPA hostile

work environment claim against all Defendants.  Count five is a negligence claim apparently

leveled against the Board.  Finally, count six is a common-law civil conspiracy claim against all

Defendants.

Defendants move for summary judgment on several grounds.  With respect to Plaintiff's

§ 1983 claims, Defendants assert that plaintiff fails to demonstrate the predicates for Monell

liability or for any constitutional violation.  (Def. Br. at 1-18.)  In seeking summary judgment on

the CEPA claim, Defendants argue that Plaintiff's claim fails for lack of a causal nexus between

the alleged protected activity and any adverse actions.  (Id. at 24-27.)  On Plaintiff's hostile work

environment claim, Defendants state that the conduct alleged was not severe or pervasive enough

to be actionable.  (Id. at 27-29.)  Defendants further assert that the individual defendants cannot

be liable under CEPA, and that the common law claims should be dismissed under CEPA or the

New Jersey Tort Claims Act.  (Id. at 18-19, 29-33.)

**A.     Section 1983 Claims**

Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . .

42 U.S.C. § 1983.  Courts interpret § 1983 as requiring proof of two elements: (1) violation of a

federal right, privilege, or immunity (2) under color of state law.  Grammar v. John J. Kane Reg'l

Ctrs.-Glen Hazel, 570 F.3d 520, 525 (3d Cir. 2009).

**1.     Monell Liability**

Under § 1983, liability for a municipal entity, such as the Board, must be based on the

theory announced in Monell v. Department of Social Services of New York.  436 U.S. 658, 690

(1978).  Under Monell, a party can pursue a municipal entity if it can be shown that a policy or

custom of the entity lead to a violation of a plaintiff's rights.  Id. at 690; Watson v. Abington

Twp., 478 F.3d 144, 155 (3d Cir. 2007).  A plaintiff can demonstrate a policy if a final municipal

decisionmaker issues an "official proclamation, policy, or edict" proximately causing the injury.

Watson, 478 F.3d at 155, 156.  To show conduct, a plaintiff must establish that the practice

proximately causing an injury "is so well-settled and permanent as virtually to constitute law."

Id. at 156.  Custom can also be demonstrated by knowledge and acquiescence to a practice by an

entity.  Id.

 Plaintiff argues that the Board's knowledge of retaliation against him by Zak and

Pesevich, together with its failure to stop the retaliation and subsequent issuance of a Rice notice

to him, constitutes a custom by virtue of knowledge and acquiescence.  (Pl. Opp. Br. at 30-31.)

This Court disagrees.  The custom of "abusive and inappropriate behavior" described by Blevis

on the part of the Board was too brief in duration to constitute something "well-settled" enough

to "constitute law."  Watson, 478 F.3d at 156; Pl. Opp. Br. at 30.  Blevis admits that he only

brought the issue to the attention of Abate, the superintendent, in July and October of 2006.  (Pl.

Opp. Br. at 30.)  Although he had previously complained to Pesevich, Blevis does not present

facts that indicate any other knowledge on the part of the Board, the ultimate decisionmaker in

this context.  Furthermore, the one act attributable to the Board—the Rice notice and the

subsequent request that Blevis undergo medical and psychiatric evaluation—is the kind of single

instance that generally will not suffice for Monell liability.  See Solomon v. Philadelphia Hous.

Auth., 143 F. App'x 447, 457 (3d Cir. 2005) (unreported) (single decision to suspend insufficient

under Monell).  This Court, therefore, finds that summary judgment must be granted to the Board

on Blevis's § 1983 claims.

## 2. First Amendment Retaliation

 The First Amendment to the United States Constitution states:

> Congress shall make no law respecting an establishment of

> religion, or prohibiting the free exercise thereof; or abridging the
> freedom of speech, or of the press; or the right of the people
> peaceably to assemble, and to petition the Government for a
> redress of grievances.

U.S. Const. Amend. I.  "To state a First Amendment retaliation claim, a plaintiff must allege two

things: (1) that the activity in question is protected by the First Amendment, and (2) that the

protected activity was a substantial factor in the alleged retaliatory action."  Hill v. Borough of

Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).  The first prong is a legal query, and the second

prong is a determination of fact.  Hill, 455 F.3d at 241.  Blevis asserts that Defendants retaliated

against him for exercising his rights under both the free speech and petition clauses.  (Pl. Opp.

Br. at 4-25.)

### a.      Free Speech Clause

When considering a violation of the free speech clause of the First Amendment, the Third

Circuit Court of Appeals utilizes the following analytical framework:

> A public employee's statement is protected activity when (1) in
> making it, the employee spoke as a citizen, (2) the statement
> involved a matter of public concern, and (3) the government
> employer did not have an adequate justification for treating the
> employee differently from any other member of the general public
> as a result of the statement he made.  A public employee does not
> speak as a citizen when he makes a statement pursuant to [his]
> official duties.  Whether an employee's speech addresses a matter
> of public concern must be determined by the content, form, and
> context of a given statement, as revealed by the whole record.

Hill, 455 F.3d at 241-42 (internal quotations and citations omitted).

Defendants maintains that summary judgment must be granted because Blevis's

complaints were all part of his official teaching duties.  (Def. Br. at 4-8.)  Specifically,

Defendants state that the safety concerns, the Pesevich bathroom incident, and the academic

issues raised by Blevis were part of his duties as a teacher at Lyndhurst High School as defined under state law and district policy.  (Def. Reply Br. at 11-12.)

The Supreme Court has held that simply because a communication is made to a supervisor in public employment, it is not outside the protection of the First Amendment. Garcetti v. Ceballos, 547 U.S. 410, 420 (2006).  Similarly, some expressions related to a public employee's job are also within the ambit of the First Amendment's protections.  Garcetti, 547 U.S. at 421.  The test as enunciated by the Supreme Court depends on what actions the public employee's job duties require.  "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Garcetti, 547 U.S. at 421.  A determination of whether a communication is within a public employee's job duties is a mixed question of law and fact.  However it can, under the appropriate circumstances, be resolved on summary judgment.  Reilly v. City of Atlantic City, 532 F.3d 216, 227 (3d Cir. 2008).

In support of their motion, Defendants have submitted to the Court several policies of the Board stating the duties of teachers respecting education standards and student safety.  (Def Reply Ex. A-C.)  The Pupil Safety Policy promulgated by the Board states that "[e]ach teacher must immediately report to the principal a safety hazard he/she detects."  (Def. Reply Ex. A at 11.)  The "Evaluation of Individual Performance Policy" states that "[t]he chief school administrator, in consultation with the teaching staff, shall develop a marking system to be used uniformly in the same grade level throughout the schools."  (Def. Reply Ex. B at 3.)  The "Field Trips Policy" indicates that "[p]upil safety should be of prime concern," and that "[e]ach field

trip should be evaluated by pupils, teachers, and the administration." (Def. Reply Ex. C at 1.) These policies make it clear that part of Blevis's job duties were to raise concerns of student safety, academic standards, and field trip chaperoning when they became apparent to him. All three of the above policies quoted supra contemplate teacher input to the administration on their respective issues. Although this inquiry is a mixed question of fact and law, this Court does not have evidence in the record before it from which a reasonable factfinder could conclude that Blevis's student safety and academic concerns were communicated as a citizen and not as an employee. Garcetti, 547 U.S. at 421-22; Reilly, 532 F.3d at 227. Therefore, when Blevis communicated with his superiors at Lyndhurst High School regarding safety in the science labs, the Pesevich boys' room incident, academic standards with respect to special education students, inconsistencies in other academic policies, or insufficient chaperoning on field trips, he made communications within his job function, and was not speaking as a citizen. Garcetti, 547 U.S. at 421-22. As these concerns constitute all of the bases of Plaintiff's arguments for his First Amendment free speech claim, Defendants are entitled to summary judgment on Plaintiff's § 1983 claim insofar as he brings it under the free speech clause.

**b.    Petition Clause**

Plaintiff also alleges § 1983 retaliation based on the petition clause of the First Amendment and the filing of his 2003 CEPA action. (Pl. Opp. Br. at 4.) "The right to participate as a party to litigation seeking to remedy an infringement of constitutionally-guaranteed or other legal rights has traditionally been considered an aspect of the freedom to petition the government for a redress of grievances protected by the First Amendment." Pollock v. City of Ocean City, 968 F. Supp. 187, 191-92 (D.N.J. 1997). In order to demonstrate that any

particular litigation is protected by the First Amendment, however, it must be non-sham litigation.  San Filippo v. Bongiovanni, 30 F.3d 424, 435, 443 (3d Cir. 1994).  In order for this Court to find that litigation was a sham, "the plaintiff must have an improper motive for bringing the suit, and the suit must have no reasonable basis."  San Filippo, 30 F.3d at 437 n.16.

Defendant bases its argument that Blevis's 2003 lawsuit was a sham on the fact that it was voluntarily dismissed by Blevis.  (Def. Reply Br. at 9.)  Plaintiff argues, on the other hand, that he filed the original lawsuit as a whistleblower in order to stop what he perceived as illegal practices in Lyndhurst High School.  (Pl. Opp. Br. at 9-10.)  This Court agrees with Plaintiff. Plaintiff's 2003 case was a CEPA claim, and he alleged retaliation for making safety complaints. In order to bring a CEPA claim, "the objecting employee must have an objectively reasonable belief, at the time of objection or refusal to participate in the employer's offensive activity, that such activity is either illegal, fraudulent or harmful to the public health, safety or welfare . . ." Mehlman v. Mobil Oil Corp., 707 A.2d 1000, 1015 (N.J. 1998).  Blevis's safety concerns in the 2003 litigation formed a reasonable basis for litigation.  (Pl. Opp. Br. at 10-11.)  Simply because it was voluntarily dismissed at a future date does not render Blevis's motive for bringing it improper or eradicate that reasonable basis.  San Filippo, 30 F.3d at 437 n.16.

As Plaintiff has satisfied the Court that filing his 2003 lawsuit was protected activity under the petition clause, the Court must move on to examine whether or not the lawsuit was a substantial factor in the alleged retaliatory actions.  Hill, 455 F.3d at 241.  This Court finds that there are sufficient questions of fact to submit Plaintiff's petition clause claim to a jury.  Zak knew of Blevis's prior lawsuit.  (Pl. 56.1 Statement ¶ 30.)  Blevis was also subject to abrupt schedule and class assignment changes that coincided with conflicts he had with Zak and

Pesevich.  (Id. ¶¶ 32, 39-41, 58-62.)  Finally, there is evidence that Zak was frustrated by Blevis's apparently zealous grievance activities.  (Id. ¶ 69-70.)  While there is also evidence in the record that Blevis was difficult to work with and that his coworkers were uncomfortable around him, examining the facts in the light most favorable to Blevis, this Court finds that there is sufficient evidence related to potential retaliation concerning his initial lawsuit to survive a motion for summary judgment.  Defendants' motion for summary judgment is, therefore, granted as to Plaintiff's § 1983 First Amendment retaliation claims with respect to the free speech clause, but denied on Plaintiff's First Amendment retaliation claims under the petition clause.

### 3.    Substantive Due Process

Defendant argues that Plaintiff cannot satisfy the requirements for a substantive due process claim, as tenured public employment is not fundamental under the due process clause of the Fourteenth Amendment.  (Def. Br. at 16.)  Plaintiff does not dispute this in his opposition brief.  This Court, therefore, grants summary judgment to Defendant on Plaintiff's substantive due process claim.  See Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 142-43 (3d Cir. 2000) (holding that tenured professorship is incapable of supporting a substantive due process claim).

### 4.    Procedural Due Process

Plaintiff's final theory under § 1983 is that he was denied procedural due process when suspended by the Board for his unwillingness to undergo medical and psychiatric examinations.  (Pl. Opp. Br. at 27.)  Defendants argue that Blevis's procedural due process claim is subject to preclusion due to the findings of an administrative law judge and that the Defendants failed to publish anything sufficiently derogatory about Blevis.  (Def. Br. at 17-18; Def. Reply Br. at 13.)

13

"[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation <u>plus</u> deprivation of some additional right or interest." <u>Hill</u>, 455 F.3d at 236 (emphasis in original).  The Third Circuit Court of Appeals applies the stigma-plus test, which requires, in the public employment context, "creation and dissemination of a false and defamatory impression" and infringement of a state law right.  <u>Dee v. Borough of Dunmore</u>, 549 F.3d 225, 234 (3d Cir. 2008); <u>Hill</u>, 455 F.3d at 236.

An analysis of Blevis's argument in opposition, however, indicates that he alleges only actions by the Board in violating his procedural due process rights.  (Pl. Opp. Br. at 27.) Specifically, Blevis points to his suspension by the Board and the public nature of the Board's action.  (<u>Id.</u>)  As this Court has already held that the Board is not subject to <u>Monell</u> liability, this Court grants summary judgment on Plaintiff's § 1983 procedural due process claim.

## B.    CEPA Retaliation Claim

"To establish a prima facie cause of action under CEPA, a plaintiff must demonstrate that[:] '(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. § 34:19-3c[;] (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.'" <u>Yurick v. State</u>, 875 A.2d 898, 903 (N.J. 2005) (quoting <u>Dzwonar v. McDevitt</u>, 828 A.2d 893, 900 (2003)).  If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for taking the employment action. <u>Zappasodi v. State</u>, 761 A.2d 96, 100 (N.J. Super. Ct. App. Div. 2000).  The burden then returns to the plaintiff to demonstrate

14

pretext.  Estate of Oliva v. New Jersey, 579 F. Supp 2d 643, 684 (D.N.J. 2008).

Defendants claim that Blevis does not argue public purpose, cannot establish evidence of an adverse employment action, that there is no causal nexus between his whistleblowing activities and any alleged retaliation, and that he is precluded from arguing certain issues due to an administrative decision issued August 7, 2007.  (Def. Br. at 21-27; Def. Reply Br. at 2, 8.) Plaintiff asserts that he can meet his burden on every element of a CEPA claim, and that material issues of fact warrant denial of summary judgment.  (Pl. Br. at 34-43.)

In order to establish a public purpose for whistleblowing under CEPA,

> the objecting employee must have an objectively reasonable belief, at the time of objection or refusal to participate in the employer's offensive activity, that such activity is either illegal, fraudulent or harmful to the public health, safety or welfare, and that there is a substantial likelihood that the questioned activity is incompatible with a constitutional, statutory or regulatory provision, code of ethics, or other recognized source of public policy. Specific knowledge of the precise source of public policy is not required.

Mehlman v. Mobil Oil Corp., 707 A.2d 1000, 1015 (N.J. 1998).  Blevis has met his burden with respect to the first element of a prima facie CEPA claim.  He raised numerous safety issues with his supervisors, such as students eating lunch in his lab and the insufficient number of chaperones on a field trip.  He also raised the student privacy issue of Pesevich's contact with a student in a school bathroom.  Finally, Blevis raised an academic issue that he could reasonably believe to be a public concern with respect to the issuance of credit without sufficient hours of instruction.  This Court finds that a reasonable finder of fact could conclude that Blevis could have reasonably believed one or more of the above occurrences to be harmful to public safety or welfare and contrary to the law.  Mehlman, 707 A.2d at 1015.

15

With respect to whether or nor Blevis suffered adverse employment actions, he claims that he was suspended, lost stipends, and lost the opportunity for promotions.  Suspension is an adverse action under CEPA.  <u>Victor v. State</u>, 952 A.2d 493, 504 (N.J. Super. Ct. App. Div. 2008).  Similarly, Blevis's loss of a stipend is an adverse employment action under CEPA. <u>Maimone v. City of Atlantic City</u>, 903 A.2d 1055, 1063-64 (N.J. 2006) (holding that reduction in compensation even without demotion constitutes an adverse employment action under CEPA).

In their reply brief, Defendants make the argument that preclusion principles prevent Blevis from arguing that his suspension or loss of stipends were adverse employment actions due to the decision handed down on August 7, 2007 by the Honorable Carol I. Cohen, New Jersey A.L.J., in an administrative proceeding.  (Def. Reply Br. at 3.)  "In order for <u>res judicata</u> to apply, there must be (1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action."  <u>In re Estate of Gabrellian</u>, 859 A.2d 700, 708 (N.J. Super. Ct. App. Div. 2004) (quoting <u>Brookshire Equities, LLC v. Montaquiza</u>, 787 <i>A</i>.2d 942, 946-947 (N.J. Super. Ct. App. Div. 2002)).  "For collateral estoppel to apply, the party asserting the bar must show that: (1) the particular issue to be precluded is identical to the issue decided in the previous proceeding; (2) the issue was actually litigated in the prior action, <u>i.e.</u>, there was a full and fair opportunity to litigate the issue in the prior action; (3) a final judgment on the merits was issued in the prior proceeding; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom preclusion is asserted was a party to or in privity with a party to the earlier proceeding."  <u>Monek v. Borough of South River</u>, 808 A.2d 114, 120-21 (N.J. Super. Ct. App. Div. 2002).

This Court finds that neither claim preclusion nor issue preclusion prevent Blevis from

16

establishing that an adverse employment action occurred.  With respect to res judicata, the legal

issue before Judge Cohen was whether or not the evidence sufficed for the Board to require that

Blevis undergo a medical examination under N.J.S.A. § 18A:16-2.  (Def. Reply Ex. D at 3, 6.)

Judge Cohen did not rule on any CEPA claim brought by Blevis, and therefore res judicata does

not apply with respect to any defendant.  On the issue of whether collateral estoppel applies to

any of the factual or legal findings made by Judge Cohen, this Court finds that the August 7,

2007 Opinion of Judge Cohen does not foreclose the issue of whether or not the Board retaliated

against Blevis; from the perspective of Blevis's CEPA claim, Judge Cohen's opinion establishes

only that the Board had a legitimate, nondiscriminatory reason for requiring Blevis to submit to

medical and psychiatric examination.  (Id. at 6-19.)  Judge Cohen found numerous facts related to

Blevis's behavior, but did not address whether or not his suspension was an adverse action under

CEPA, whether causation existed under CEPA, or whether the Board's action was pretextual.

This Court, therefore, finds that Blevis has presented sufficient evidence of an adverse

employment action to survive summary judgment.

   The final argument presented by Defendants is that no causal nexus exists between

Blevis's whistleblowing and any adverse employment actions because temporal proximity is

absent.  (Def. Br. at 25-27.)  Plaintiff argues causal nexus and pretext at the same time, and urges

this Court to find that the sequence of events leading up to Plaintiff's filing of this lawsuit in late

2006 satisfies both.  (Pl. Opp. Br. at 42-43.)  Temporal proximity between protected activity and

adverse employment actions alone does not suffice to demonstrate causation in a CEPA claim.

Hancock v. Borough of Oaklyn, 790 A.2d 186, 194 (N.J. Super. Ct. App. Div. 2002).  Temporal

proximity is, however, probative of the causal connection in a CEPA claim.  Maimone, 903 A.2d

at 1065.  Blevis filed this lawsuit on October 10, 2006, and was served with the Rice notice on October 17, 2006.  This brief, seven-day period, combined with the other allegations of Blevis—such as Pesevich's determination that Blevis should teach astronomy after their discussion of the Pesevich bathroom incident—provides enough evidence of causal connection for Blevis to state the final element of his prima facie CEPA case.

Similarly, the evidence provided by Blevis suffices to demonstrate pretext.  In order to survive summary judgment, a "plaintiff  must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder <u>could</u> rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotations and citation omitted) (emphasis in original); <u>Kolb v. Burns</u>, 727 A.2d 525, 531 (N.J. Super Ct. App. Div. 1999).  Here, Blevis has presented a history of protected activity involving safety and academic complaints that exasperated his peers and supervisors, most notably Zak and Pesevich.  Defendants have rebutted Blevis's prima facie case with evidence that be behaved erratically and that he disturbed other teachers; in fact, Judge Cohen found so in her August 7, 2007 Opinion.  But a reasonable fact finder could conclude, based upon the facts as a whole, that while the Board may have had a legitimate reason for acting against Blevis, that it actually did so in order to remove a teacher who was engaging in protected activity.  This Court finds, therefore, that Defendants are not entitled to summary judgment on Blevis's CEPA retaliation claim.

## C.    CEPA Hostile Work Environment Claim

Blevis also brought a CEPA hostile work environment claim in his Complaint.  In

seeking summary judgment on that claim, Defendants assert the same arguments discussed above with respect to Blevis's CEPA retaliation claim.  (Def. Br. at 28.)  This Court rejected those arguments <u>supra</u>.

To establish a hostile work environment claim under CEPA, a plaintiff "must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive."  <u>Isetts v. Borough of Roseland</u>, No. 2480-02, 2005 WL 2334363, at *22 (N.J. Super. Ct. Law Div. Sept. 22, 2005) (quoting  <u>Lehmann v. Toys 'R' Us</u>, 132 N.J. 587, 603-04 (1993).  Although a hostile work environment claim requires a different showing that a retaliation claim, this Court finds that Blevis has put forward sufficient facts to establish the requisite but-for causation in a CEPA hostile work environment claim and also to demonstrate that there was a sufficiently severe impact on his employment to survive summary judgment.  Blevis was in regular conflict with Zak and Pesevich, and a reasonable finder of fact could conclude that the conflict was related to his recurring safety and academic standards complaints.  Furthermore, the constant changes to Blevis's schedule, the allegedly retributive course assignments, the loss of his stipends, and his eventual suspension represent sufficiently severe repercussions to constitute a hostile work environment.  <u>See</u> <u>Lindsey v. New Jersey Dept. of Corr.</u>, No. 04-3815, 2007 WL 836667, at *11 (D.N.J. Mar. 14, 2007) (finding that consistent discipline after protected activity supports hostile work environment claim under Title VII).  This Court, therefore, finds that Blevis's hostile work environment claim under CEPA survives summary judgment.

**D.     Individual Defendants' Liability Under CEPA**

19

The individual defendants assert that they cannot be subject to liability under CEPA. (Def. Br. at 32-33.)  This Court finds, on the contrary, that individual liability exists under CEPA.  Fasano v. Federal Reserve Bank of N.Y., 457 F.3d 274, 289 (3d Cir. 2006); Espinosa v. Continental Airlines, 80 F. Supp 2d 297, 305-06 (D.N.J. 2000).  The individual defendants are therefore not entitled to summary judgment on this basis.

**E.     The Common Law Claims and the CEPA Waiver Provision**

Defendants also argue that Plaintiff's common law claims fail due to the New Jersey Tort Claims Act, N.J.S.A. § 59:1-1, the Workers' Compensation Act, N.J.S.A.§ 34:15-8, and CEPA's waiver provision, N.J.S.A. § 34:19-8.  (Def. Br. at 18-19, 29-32.)  Plaintiff does not oppose Defendants' argument under the New Jersey Tort Claims Act, but claims that the other statutes do not bar any of his claims.  (Pl. Opp. Br. at 43-44.)

**1.     Application of the New Jersey Tort Claims Act**

The New Jersey Tort Claims Act immunizes public entities from suit unless a statutory exception applies.  N.J.S.A. § 59:2-1.  One of those exceptions is that if a public entity's employees would be liable for acts carried out within the scope of their employment, the public entity is also liable.  N.J.S.A. § 59:2-2.  This Court finds that sufficient issues of material fact exist, detailed supra with respect to Blevis's § 1983 and CEPA claims, to find that the New Jersey Tort Claims Act cannot bar liability for the Board on the present record.  See Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1108 (N.J. 2009) (noting that "public entities may be found liable for discrimination claims brought by their employees notwithstanding the limitations imposed by the TCA"); Anastasopoulis v. New Jersey Transit, No. 6516-04, 2007 WL 3306778, at *6 (N.J. Super. Ct. App. Div. 2007) (applying negligence standard under respondeat superior

to public entity).

## 2.    The CEPA Waiver Provision

CEPA provides that "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law."  N.J.S.A. § 34:19-8.  This waiver, construed narrowly to accommodate CEPA's remedial purpose, requires an analysis of "whether the other claims require different proofs from those required to sustain a CEPA claim."  Ivan v. County of Middlesex, 595 F. Supp 2d 425, 465 (D.N.J. 2009); Young v. Schering Corp., 660 A.2d 1153, 1157-59 (N.J. 1995).  Defendants urge that this Court find that the CEPA waiver provision bars Plaintiff's negligent infliction of emotional distress, negligence, and civil conspiracy claims.  (Def. Br. at 30.)  Plaintiff maintains that his claims are not barred because they are distinct from his CEPA claims.  (Pl. Opp. Br. at 44.)

The only theory under which Plaintiff asserts that he was harmed in this case was through the retaliatory actions of Defendants.  He does not present a theory which relieves this Court of the obligation of finding that Defendants retaliated against him in some way.  Plaintiff's negligence, negligent infliction of emotional distress, and civil conspiracy claims all require Plaintiff to demonstrate retaliation against him as the predicate for the harm and the illegal behavior.  Casper v. Paine Webber Group, Inc., 787 F. Supp. 1480, 1507-09 (D.N.J. 1992) (distinguishing between claims under CEPA waiver provision based on theories of claims and harm alleged).  This Court, therefore, grants summary judgment to Defendants on Plaintiff's negligence, negligent infliction of emotional distress, and civil conspiracy claims.

This Court finds that it need not address Defendants' Workers' Compensation Act

argument because it has already dismissed the negligence and negligent infliction of emotional distress claims.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part.  An appropriate order accompanies this opinion.


DATED: September 25, 2009                          __/s/ Jose L. Linares_____
                                                    United States District Judge